**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| National Bank of Anguilla<br>(Private Banking and Trust) Ltd., | ) )<br>) | |
| Plaintiff, | ) ) | C.A. No.: 9:17-cv-653-PMD |
| v. | ) ) | **ORDER** |
| Robert Considine and Anne Considine, | ) )<br>) | |
| Defendants. | ) )<br>) | |

This matter is before the Court on Defendants Robert and Anne Considine's motion to dismiss (ECF No. 12). For the reasons set forth herein, the Considines' motion is denied.

## BACKGROUND/PROCEDURAL HISTORY

This action arises out of the Considines' acquisition of property on Anguilla. To finance the property, the Considines entered into a loan agreement with Plaintiff National Bank of Anguilla (Private Bank and Trust) Ltd. on March 2, 2007. National Bank alleges that the Considines defaulted on the loan agreement by failing to make the required payments and still owe almost $200,000.00 under its terms.

The Considines also entered into an overdraft agreement with National Bank on February 26, 2010. Under the terms of the overdraft agreement, National Bank would continue to honor charges against the Considines' account up to $50,000.00. National Bank claims that the Considines also defaulted on the overdraft agreement and owe almost $60,000.00 in principal and interest under the terms of that agreement. Accordingly, National Bank brings the instant action to recover the money the Considines purportedly owe.

The Considines filed a motion to dismiss on May 1, National Bank responded on May 19, and the Considines replied on May 26. Accordingly, this matter is now ripe for consideration.

**DISCUSSION**

## I.    Subject Matter Jurisdiction

First, the Considines argue that this action should be dismissed because the Court lacks subject matter jurisdiction. The Court disagrees and concludes that it has jurisdiction.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, it is presumed that a federal court lacks subject matter jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)). District courts have original jurisdiction over civil actions in which the amount in controversy exceeds $75,000 and the dispute is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Section 1332(c)(1) elaborates on a foreign corporation's citizenship, stating that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."

The Considines are South Carolina citizens. However, the Considines dispute National Bank's assertion that it is a citizen of Anguilla. National Bank states that it is incorporated under the Trust Companies and Offshore Banking Act of Anguilla, with its headquarters "located at the Conrad W. Fleming Corporate Building on St. Mary's Road in the Valley, Anguilla." (National Bank's Resp. Opp'n, Ex. 1, Tacon Decl., ECF No. 17-2, at 2.) Although the parties have raised the question of whether Anguillan law recognizes National Bank's incorporation in Anguilla, the Court need not answer the question to satisfy § 1332's jurisdictional requirements. National Bank

has introduced evidence that its principal place of business is in Anguilla and the Considines have not produced any contrary evidence. The Considines are South Carolina citizens, National Bank is a citizen or subject of a foreign state, and the amount in controversy exceeds $75,000.00. Therefore, the Court finds that there is jurisdiction under § 1332(a)(2).

## II.     Statute of Limitations

Next, the Considines argue that National Bank's claims are barred by South Carolina's statute of limitations. Most breach of contract actions in South Carolina are subject to a three-year statute of limitations. *See* S.C. Code Ann. § 15-3-530(1). However, section 15-3-530(1) contains an exception for "an action upon a bond or other contract in writing secured by a mortgage of real property." *See* S.C. Code Ann. §§ 15-3-520(a), 530(1). For such an action, a twenty-year statute of limitations applies. S.C. Code Ann. § 15-3-520(a).

Without any discussion of the twenty-year statute of limitations, the Considines argue that South Carolina's three-year statute of limitations applies. They claim that because the defaults on the loan agreement and the overdraft agreement occurred more than three years before National Bank commenced this action, those claims are barred. Unsurprisingly, National Bank disagrees and argues that Anguilla's twelve-year statute of limitations applies. National Bank points out that the loan agreement states that "The Laws of Anguilla" govern it. (Compl., Personal Loan Agreement, ECF No. 1-2, at 5.) Additionally, while the overdraft agreement does not contain a choice of law provision, National Bank argues that Anguillan law applies to that agreement as well because that agreement was made and executed in Anguilla. With minimal discussion, National Bank claims that South Carolina's statute of limitations is inapplicable. For the reasons stated below, the Court finds that National Bank's claims are not barred because either Anguilla's twelve-year statute of limitations or South Carolina's twenty-year statute of limitations applies. The Court

need not undertake a choice of law analysis at this time because National Bank's claims are timely under either a twelve or a twenty-year statute of limitations.

According to the declaration of Eustella Fontaine, an Anguillan lawyer, National Bank registered its mortgage against the Considines' property on March 23, 2007, and "[t]he terms of the mortgage are stipulated in the Personal Loan Agreement dated March 2, 2007." (National Bank's Resp. Opp'n, Ex. 2, ECF No. 17-7, at 2.) The Court concludes that because the loan agreement is a contract in writing that is secured by a mortgage of real property—namely the registered land charge noted in Exhibit 2A of National Bank's response—South Carolina's twenty-year statute of limitations would apply to the loan agreement if the Court were to apply South Carolina law. Alternatively, if the Court were to apply Anguillan law, Ms. Fontaine avers that Anguilla's twelve-year statute of limitations governs National Bank's claims pertaining to both the loan and the overdraft agreement. Thus, National Bank's loan agreement claim is timely under both South Carolina law and Anguillan law.

Although the Considines do not appear to have requested the overdraft agreement for the purpose of purchasing their Anguillan property, the overdraft agreement contains almost identical language to the loan agreement regarding the collateral securing the property. Just like the loan agreement, the overdraft agreement is also secured by a charge on the Considines' property, and that separate charge is also noted in Exhibit 2A of National Bank's response. Thus, for the same reasons discussed above, the Court concludes that if it were to apply South Carolina law, the twenty-year statute of limitations would also apply to the overdraft agreement. As mentioned above, Ms. Fontaine's declaration states that under Anguillan law the twelve-year statute of limitations would also apply to National Bank's overdraft agreement claim. The Considines do not contest Ms. Fontaine's interpretation of the Anguillan statute of limitations, arguing only that

South Carolina's three-year statute of limitations applies. The Court has independently reviewed the Anguillan statute of limitations and sees no reason to doubt Ms. Fontaine's declaration. Thus, the Court concludes that both of National Bank's claims are timely regardless of whether the Court applies Anguillan or South Carolina law.

Although the Court does not doubt that the twenty-year statute of limitations would apply if the Court applied South Carolina law, the Court also notes that "in South Carolina, 'where there is any doubt as to which of two statutes of limitations applies, the doubt must be resolved in favor of the longer period.'" *Wells Fargo Bank v. Carter*, No. 9:14-cv-127-SB, 2014 WL 11034776, at *1 (D.S.C. July 22, 2014) (quoting *State v. Life Ins. Co. of Ga.*, 175 S.E.2d 203, 209 (S.C. 1970)).

## III.    Judicial Estoppel[1]

The Considines argue that National Bank is judicially estopped from bringing these claims because it did not include them in the schedule of assets and liabilities it filed with the United States Bankruptcy Court for the Southern District of New York in connection with its Chapter 11 bankruptcy proceeding. Under the doctrine of judicial estoppel,

> if a party takes a particular position in one proceeding and **succeeds in maintaining that position**, he may not take a contrary position in a later proceeding "simply because his interests have changed . . . especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

*In re Hanckel*, No. 2:14-cv-2898-RMG, 2015 WL 7251723, at *1 (D.S.C. Mar. 10, 2015) (quoting *Penn. Nat. Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 117 (4th Cir. 2012)). "'[T]he prior success rule narrows the scope of judicial estoppel to the point at which the necessity of protecting judicial integrity outweighs the ramifications of that protection upon the litigant and the judicial system.'" *Id.* (quoting *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996)).

---

[1]    The Considines also claim, without any analysis or citation to authority, that National Bank is not the real party in interest here. The Court disagrees. National Bank of Anguilla (Private Banking and Trust) Limited is the entity listed on both the loan agreement and the overdraft agreement.

Here, judicial estoppel cannot apply because National Bank has not succeeded in maintaining the inconsistent position in bankruptcy court. To the contrary, National Bank's bankruptcy proceedings are ongoing, and the bankruptcy court has not yet confirmed a plan. Therefore, judicial estoppel cannot apply.

## IV.     No Authority To Do Business In South Carolina

Next, the Considines argue that National Bank cannot bring suit in South Carolina because it has no authority to transact business in South Carolina. *See* S.C. Code Ann. §§ 33-15-101, 102. Assuming that statute applies, the Considines have failed to establish the necessary prerequisite that National Bank is transacting business in South Carolina. Subsection 33-15-101(b)(1) clearly states that maintaining, defending, or settling a proceeding does not constitute transacting business in South Carolina. Thus, the fact that National Bank sued the Considines in the state where they reside is not sufficient to constitute transacting business for the purposes of section 33-15-102. As for the underlying basis of this action, the Considines appear to have reached into Anguilla to obtain the loan at issue, rather than National Bank reaching into South Carolina. Accordingly, viewing the allegations in the light most favorable to the plaintiff, the Court concludes that National Bank was not transacting business in South Carolina.

## V.     Forum Non Conveniens

Finally, the Considines claim that this action should be dismissed under the doctrine of *forum non conveniens*. The Court disagrees. "The *forum non conveniens* doctrine is a common law doctrine now largely limited in federal court to cases where the alternative forum for litigating the dispute is outside of the United States." *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 200 (4th Cir. 2009). *Forum non conveniens* applies when "'the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all

proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administration and legal problems.'" *Id.* (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)).

> Granting a motion to dismiss for *forum non conveniens* rests in the discretion of the district court exercised upon consideration of numerous relevant factors, including (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies.

*Id.* Here, the Court concludes that the *forum non conveniens* doctrine does not apply. First, and most importantly, National Bank brought suit against the Considines in their home state of South Carolina. That can hardly be described as oppressive or vexatious. Second, the Court does not anticipate any difficulty in obtaining proof of these claims, at least two of the witnesses—the Considines—live in South Carolina, and there does not appear to be a need to view the premises although the Court would welcome a visit to Anguilla. The parties have not introduced any evidence as to the cost of trying the case in Anguilla, so the Court cannot weigh that factor. Thus, the only factor favoring *forum non conveniens* dismissal is the interest of trying cases where the substantive law applies and the local interest of having localized controversies decided at home. That factor alone, compared to the other factors and to National Bank's choice of the Considines' home state as a forum is insufficient to justify dismissal on *forum non conveniens* grounds.

## CONCLUSION

For the foregoing reasons, the Considines' motion to dismiss is **DENIED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**August 1, 2017**
**Charleston, South Carolina**